**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CASSIDY MOORE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VIVINT LLC,

Defendant.
_______________________________________/

Case No. ________________

**CLASS ACTION**

JURY TRIAL DEMANDED

# CLASS ACTION COMPLAINT

Plaintiff Cassidy Moore ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendant Vivint LLC ("Defendant") and, based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and upon information and belief, supported by the investigation of counsel, as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1. Vivint LLC bombarded Plaintiff and others with telephone calls (the "telephone communications") promoting Defendant's home security and smart-home monitoring services. Plaintiff's number was registered on the National Do Not Call Registry. Plaintiff told Defendant to stop, revoking any consent Plaintiff had given. The telephone communications kept coming.

2. Defendant's conduct violates the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and its implementing regulations adopted by the

Federal Communications Commission ("FCC"), codified at 47 C.F.R. § 64.1200, *et seq.*, as well as the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

3. Defendant's unlawful telemarketing campaign invaded Plaintiff's privacy, disrupted Plaintiff's daily life, and forced Plaintiff to investigate the source of the telephone communications and retain counsel to stop them.

4. Through this class action, Plaintiff seeks statutory damages, liquidated damages, and injunctive relief to compensate for Defendant's misconduct and to stop it from continuing.

## JURISDICTION AND VENUE

5. **Subject Matter Jurisdiction.** This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331, as those claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* This Court also has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because (1) the proposed Classes contain more than 100 members in the aggregate; (2) upon information and belief, the matter in controversy, aggregating the claims of the individual Class members, exceeds $5,000,000, exclusive of interest and costs; and (3) at least one member of the Class is a citizen of a State different from Defendant. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6). Members of the FTSA Internal DNC Class, all of whom received Defendant's telephone communications in Florida, include citizens of Florida. Defendant, an unincorporated association, is a citizen of Utah, the State under whose laws it is

organized and where it has its principal place of business. *See id.* § 1332(d)(10). This Court has supplemental subject matter jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the TCPA claims and are so related that they form part of the same case or controversy.

6. **Article III Standing.** Plaintiff has standing under Article III. In this Circuit, "calls placed in violation of the Telephone Consumer Protection Act are injuries in fact." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019). A telephone call "intrudes upon the seclusion of the home, fully occupies the recipient's device for a period of time, and demands the recipient's immediate attention," and those injuries "are sufficiently concrete and particularized for Article III standing." *Id.* at 1270. Plaintiff's injury is also fairly traceable to Defendant's failure to maintain the do-not-call procedures that 47 C.F.R. § 64.1200(d) requires, because Plaintiff asked Defendant to stop and the telephone communications continued. *See id.* at 1272 (named plaintiff satisfied traceability where "he repeatedly asked Telecel and DIRECTV to stop calling him").

7. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant. Defendant is subject to specific personal jurisdiction in this District because it purposefully directed the unlawful telephone communications at Plaintiff, who resided in this District, and Plaintiff's claims arise directly from that conduct. Defendant initiated or caused to be initiated the telephone communications to

Plaintiff's cellular telephone while Plaintiff was located in this District. By directing telephone communications into this forum, Defendant purposefully availed itself of the privilege of conducting activities in this District such that it should reasonably anticipate being haled into court here. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985).

8. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, where Plaintiff received Defendant's unlawful telephone communications.

**PARTIES**

9. Plaintiff Cassidy Moore is a natural person and, at all relevant times, was a resident of Jacksonville, St. Johns County, Florida. At all relevant times, Plaintiff was the subscriber and primary user of the cellular telephone number ending in 1932 (the "Number"). Plaintiff uses the Number as a personal, residential telephone line. The Number is assigned to a cellular telephone exchange service, is not used for any business purpose, and is used by Plaintiff for personal, family, and household purposes, including in and around Plaintiff's home and as the primary means for friends and family to reach Plaintiff. Plaintiff is therefore a "residential telephone subscriber" within the meaning of the TCPA and its implementing regulations. Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant Vivint LLC is a limited liability company organized under the laws of Utah with its principal place of business in Lehi, Utah. Defendant is in the business of marketing and selling home security systems and smart-home monitoring

services to consumers nationwide. Defendant directed the telephone communications into the State of Florida, where Plaintiff resides.

## TCPA BACKGROUND

11. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, to curb abusive telemarketing practices that invade consumer privacy. Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy," particularly through automated technologies like robocalls and text messages. Pub. L. No. 102-243, § 2(5), 105 Stat. 2394 (1991). *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71 (2012) (noting the TCPA's response to "[v]oluminous consumer complaints about abuses of telephone technology").

12. Telemarketing calls require prior express written consent, defined as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(9). The written agreement must also include a clear and conspicuous disclosure that the signatory is "not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." *Id.* § 64.1200(f)(9)(i)(B).

13. A called party may revoke prior express consent, including prior express written consent, "by using any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(10). A reply of "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe" to an incoming text message is a reasonable means per se to revoke consent, and once consent is revoked, "the caller may not send additional robocalls and robotexts." *Id.* Callers "may not designate an exclusive means to request revocation of consent." *Id.* All revocation requests "must be honored within a reasonable time not to exceed ten business days from receipt of such request." *Id.*

14. The TCPA requires any person or entity making telemarketing calls to a residential telephone subscriber to institute procedures for maintaining a do-not-call list. 47 C.F.R. § 64.1200(d). These procedures must meet minimum standards, including: (1) a written do-not-call policy, available upon demand, § 64.1200(d)(1); (2) training of personnel in the existence and use of the do-not-call list, § 64.1200(d)(2); (3) recording do-not-call requests and placing the subscriber's name and number on the list at the time the request is made, and honoring such requests within a reasonable time not to exceed ten business days, § 64.1200(d)(3); (4) providing the called party with the name of the caller, the entity on whose behalf the call is made, and a contact number, § 64.1200(d)(4); and (5) maintaining a record of each do-not-call request for five years, § 64.1200(d)(6). A person who has received more than one telemarketing call within any 12-month period in violation of these regulations may bring a private action. 47 U.S.C. § 227(c)(5).

15. The TCPA provides statutory damages of $500 per violation, trebled to $1,500 for willful or knowing violations, and injunctive relief to halt ongoing misconduct. 47 U.S.C. § 227(c)(5).

## FTSA BACKGROUND

16. The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, protects Florida residents from intrusive telemarketing calls and text messages. The FTSA safeguards privacy and prevents harassment through unsolicited "telephonic sales calls"—defined as calls, texts, or voicemails for the purpose of selling, extending credit, or gathering information for such purposes. Fla. Stat. § 501.059(1)(j). The FTSA applies to telemarketers that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida.

17. The FTSA requires telemarketers to honor requests to stop. A violation is actionable after continued calls or texts following such a request. Fla. Stat. § 501.059(5).

18. The FTSA provides liquidated damages of $500 per violation, trebled to $1,500 for willful or knowing violations, injunctive relief, and reasonable attorney's fees. Fla. Stat. § 501.059(10), (11)(a).

## FACTUAL ALLEGATIONS

19. The Number has been registered on the National Do Not Call Registry since December 12, 2022, more than thirty-one days before Plaintiff received the telephone communications alleged in this Complaint.

20. To the extent Defendant contends that it relied on any consent to begin the telephone communications, any such consent was revoked when Plaintiff asked Defendant to stop. *See* 47 C.F.R. § 64.1200(a)(10); *see also id.* § 64.1200(d)(3).

21. Defendant initiated or caused to be initiated unlawful telephone communications to Plaintiff's telephone number in violation of the TCPA and Florida law.

22. The following are examples of the unlawful telephone communications Defendant initiated to Plaintiff's telephone number. These examples are not exhaustive. Upon information and belief, discovery will reveal additional unlawful telephone communications initiated by Defendant or on its behalf to Plaintiff and the putative class within the applicable limitations period.

23. Plaintiff's telephone records reflect the following calls from Defendant, each placed after Plaintiff asked Defendant to stop contacting Plaintiff:

| **Date** | **Calling Number** |
|---|---|
| 4/28/2026 | (419) 863-7622 |
| 4/29/2026 | (419) 863-7622 |
| 4/29/2026 | (866) 333-8196 |
| 4/30/2026 | (419) 863-7622 |
| 5/1/2026 | (419) 863-7622 |
| 5/5/2026 | (419) 863-7622 |
| 5/6/2026 | (419) 863-7622 |
| 5/8/2026 | (419) 863-7622 |
| 5/15/2026 | (419) 863-7622 |
| 5/27/2026 | (419) 863-7622 |

| Date | Calling Number |
|---|---|
| 6/23/2026 | (419) 863-7622 |

24. The telephone communications identified Defendant as the responsible party.

25. The telephone communications were initiated from (419) 863-7622 and (866) 333-8196. Upon information and belief, those numbers are owned, controlled, or used by Defendant, or by a third party acting on Defendant's behalf, and Defendant, or someone acting on its behalf, used those numbers to initiate the telephone communications to Plaintiff. The callers identified themselves as calling from Vivint and offered Defendant's home security services.

26. Each of the telephone communications was initiated for the purpose of encouraging the purchase of Defendant's goods or services. Each was therefore a "telephone solicitation" and "telemarketing" within the meaning of 47 C.F.R. § 64.1200(f)(13) and (f)(15). Each was also a "telephonic sales call" within the meaning of Fla. Stat. § 501.059(1)(j).

27. Defendant's representatives called Plaintiff to sell Defendant's home security system. Plaintiff spoke with a Vivint representative but never signed any agreement with Defendant. On April 27, 2026, Plaintiff asked Defendant in writing to stop contacting Plaintiff by replying "Stop" by text message to (775) 487-5821. Upon information and belief, (775) 487-5821 is owned, controlled, or used by Defendant, or by a third party acting on Defendant's behalf, and Defendant received Plaintiff's request. Defendant did not stop. Over the following two months, Defendant called

Plaintiff at least eleven more times, through at least June 23, 2026—more than fifteen days after Plaintiff's request.

28. Given the capabilities of modern telemarketing technology, Defendant had the ability to immediately comply with Plaintiff's do-not-call request. By failing to immediately record and honor Plaintiff's request and continuing to initiate telephone communications after that request, Defendant failed to honor Plaintiff's do-not-call request "within a reasonable time." *See Lourie v. Papa John's Int'l, Inc.*, No. 1:23-CV-4320-MHC, 2024 U.S. Dist. LEXIS 119679, at *9–10 (N.D. Ga. June 25, 2024) (holding that, at the pleading stage, the court must accept as true the allegation that defendant had the capability to immediately comply with a do-not-call request and must infer that defendant could have done so prior to sending additional telemarketing messages).

29. Defendant's failure to honor Plaintiff's do-not-call request strongly suggests that Defendant also fails to meet the other minimum standards for maintaining a do-not-call list required by 47 C.F.R. § 64.1200(d), including: (1) maintaining a written do-not-call policy available upon demand, § 64.1200(d)(1); (2) training personnel on the existence and use of the do-not-call list, § 64.1200(d)(2); (3) recording the request and placing Plaintiff's name and number on the list at the time the request is made, § 64.1200(d)(3); and (4) maintaining a record of the request for five years, § 64.1200(d)(6). It is implausible that Plaintiff would have continued receiving telephone communications after a do-not-call request if Defendant maintained these procedures as required by law.

30. Section 501.059(5) contains no grace period: once a consumer has communicated that wish, the telephone solicitor "may not initiate an outbound telephone call" to that consumer. Fla. Stat. § 501.059(5). Defendant nonetheless called Plaintiff again, as alleged above.

31. Defendant's unlawful telephone communications caused Plaintiff and the Class concrete injury and actual damages, including invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, consumption of cellular phone battery and data, violation of statutory privacy rights, and disruption to daily life. Plaintiff received the telephone communications at inconvenient times, was forced to stop and check Plaintiff's phone to confirm they were not emergencies, and was compelled to investigate the source of the telephone communications and seek legal counsel to stop Defendant's conduct.

32. Upon information and belief, Defendant maintains and/or has access to outbound and inbound transmission reports for all telephone communications initiated for the purpose of promoting the sale of its goods and services, which show the dates, times, target telephone numbers, and content of each telephone communication made to Plaintiff and the Class members.

## CLASS ALLEGATIONS

33. Plaintiff brings this action individually and as a class action under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of the following proposed Classes:

> **TCPA National DNC Class:** All persons in the United States who, from four years prior to the filing of this action

through the date of class certification, (1) received more than one telephone solicitation within any 12-month period, (2) made by or on behalf of Defendant, (3) to a telephone number that had been registered on the National Do Not Call Registry for at least thirty-one days.

**TCPA Internal DNC Class:** All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) received more than one telemarketing telephone call within any 12-month period, (2) made by or on behalf of Defendant, (3) after the person had communicated to Defendant, or to anyone calling on Defendant's behalf, a request to not receive further telephone communications.

**FTSA Internal DNC Class:** All persons in the State of Florida who, from July 1, 2021, through the date of class certification, (1) received one or more telephonic sales calls, (2) made by or on behalf of Defendant, (3) after the person had communicated to Defendant, or to anyone calling on Defendant's behalf, that the person did not wish to receive further telephone communications.

34. The Classes defined above are referred to herein individually or collectively as the "Class."

35. Plaintiff reserves the right to expand or narrow the Class definitions following discovery.

36. Excluded from the Class are: (1) Defendant and its officers, directors, agents, and employees; (2) members of their immediate families and their legal representatives, heirs, successors, or assigns; (3) any entity in which Defendant has or had a controlling interest; (4) any judicial officer presiding over this action and the members of his or her immediate family and judicial staff; and (5) all persons who properly request exclusion from the Class.

37. **Ascertainability.** The Class is defined by objective criteria, and its members can be identified from Defendant's and its vendors' call transmission records, lead files, dialing-platform records, customer-relationship-management data, and carrier records. The National Do Not Call Registry identifies which numbers were registered.

38. **Numerosity.** The exact number of Class members is unknown to Plaintiff at this time but is ascertainable through Defendant's business records. Upon information and belief, each Class contains more than 100 members. Telemarketing campaigns are designed to reach large volumes of consumers—the industry refers to these recipients as "leads"—to convert a small percentage into paying customers. Joinder of all Class members is impracticable.

39. **Commonality and Predominance.** This case is driven by Defendant's uniform conduct—the same telemarketing campaign, the same equipment, and the same disregard for the law—applied to every Class member. Common questions of law and fact predominate, including:

a. Whether Defendant contacted numbers registered on the National DNC in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c);

b. Whether Defendant failed to maintain the "minimum standards" for statutorily required "procedures for maintaining a list of persons who request not to receive such calls" pursuant to 47 C.F.R. § 64.1200(d);

c. Whether Defendant disregarded requests to not receive further telephone communications;

d. Whether Defendant's telephone communications constitute "telephone solicitations" and/or "telemarketing" under the TCPA;

e. Whether Defendant's telephone communications constitute "telephonic sales calls" under the FTSA;

f. Whether Defendant's conduct was knowing and/or willful;

g. Whether Plaintiff and the Class are entitled to statutory damages, liquidated damages, and the amount of such damages; and

h. Whether Defendant should be enjoined from further violations of law alleged herein.

40. **Typicality.** Plaintiff's claims are typical of the Class. Plaintiff and Class members were all subjected to the same telemarketing campaign, using the same equipment, through the same methods, in violation of the same statutes. Plaintiff's claims arise from the same course of conduct and are based on the same legal theories as those of every Class member. There are no defenses unique to Plaintiff.

41. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the Class and is committed to vigorously prosecuting this action. Plaintiff has retained counsel with substantial experience in TCPA class actions and consumer protection litigation, and the resources necessary to advance this case through trial or resolution.

42. **Superiority.** A class action is the superior method for adjudicating this controversy. The statutory damages available to each Class member—$500 to $1,500 per violation—are too modest to justify the cost of individual litigation. Without class treatment, Defendant's unlawful conduct would go largely unchecked, as most consumers lack the resources or incentive to bring individual claims. A class action also conserves judicial resources by resolving thousands of substantially identical claims in a single proceeding and eliminates the risk of inconsistent judgments—where, for example, one court might enjoin Defendant's conduct while another permits it to continue.

43. In addition to satisfying Fed. R. Civ. P. 23(a), Plaintiff satisfies Rule 23(b) because:

a. Defendant engaged in a uniform course of conduct toward the Class, making final injunctive relief appropriate with respect to the Class as a whole under Rule 23(b)(2); and

b. Questions of law and fact common to the Class predominate over any individual questions, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). Common questions—including whether Defendant had prior express invitation or permission, and whether Defendant's violations were willful—can be resolved with common proof, while no individual question threatens to overwhelm the litigation.

**CAUSES OF ACTION**

**COUNT 1**

**Violation of the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)**

**(On Behalf of Plaintiff and the TCPA National DNC Class)**

44. Plaintiff incorporates by reference and realleges the preceding paragraphs as though fully set forth herein.

45. The TCPA's implementing regulations prohibit initiating any telephone solicitation to a residential telephone subscriber whose number is registered on the

National Do Not Call Registry without prior express invitation or permission. 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(5). A private right of action exists when a person receives more than one such call within any 12-month period. *Id.*

46. At all relevant times, Plaintiff's telephone number was registered on the National Do Not Call Registry. Wireless subscribers who register on the National DNC are presumed to be residential subscribers. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14038–39 (2003).

47. Defendant—or third parties acting on Defendant's behalf—initiated more than one telephone communication within a 12-month period to Plaintiff's and the Class members' telephone numbers while those numbers were registered on the National DNC.

48. The telephone communications were "telephone solicitations": each was initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. 47 C.F.R. § 64.1200(f)(15).

49. Defendant did not have prior express invitation or permission to initiate the telephone communications to Plaintiff or the Class. Any established business relationship ended when Plaintiff asked Defendant to stop: a seller-specific do-not-call request terminates an established business relationship for telemarketing and telephone solicitation purposes, even if the subscriber continues to do business with the seller. 47 C.F.R. § 64.1200(f)(5)(i).

50. Defendant's conduct violated 47 C.F.R. § 64.1200(c)(2) and is actionable under 47 U.S.C. § 227(c)(5).

51. As a result of Defendant's violations, Plaintiff and the Class suffered concrete harm, including invasion of privacy, aggravation, annoyance, intrusion upon seclusion, and disruption to daily life.

52. Defendant's violations were willful or knowing. The National DNC is publicly available and telemarketers are required to scrub their call lists against the registry no more than 31 days before initiating any solicitation. 47 C.F.R. § 64.1200(c)(2)(i)(D). Defendant either failed to scrub its lists—a deliberate disregard of its legal obligations—or scrubbed and called anyway.

53. Plaintiff and the Class are entitled to:

a. An injunction prohibiting Defendant from continuing to violate the TCPA. 47 U.S.C. § 227(c)(5)(A);

b. Statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5)(B); and

c. Treble damages of $1,500 per violation for Defendant's willful or knowing violations. 47 U.S.C. § 227(c)(5)(C).

**COUNT 2**

**Violation of the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the TCPA Internal DNC Class)**

54. Plaintiff incorporates by reference and realleges the preceding paragraphs, except for the paragraphs in the preceding Count, as though fully set forth herein.

55. The TCPA's implementing regulations require any person or entity making telemarketing calls to a residential telephone subscriber to institute procedures for maintaining a do-not-call list meeting specified minimum standards, including a written policy, training of personnel, recording and honoring of do-not-call requests within ten business days, caller identification, and maintenance of records for five years. 47 C.F.R. § 64.1200(d)(1)–(6). A private right of action exists when a person receives more than one telemarketing call within any 12-month period in violation of these regulations. 47 U.S.C. § 227(c)(5).

56. The obligation under § 64.1200(d) is not limited to honoring individual stop requests. Any person making telemarketing calls must have all required procedures in place before initiating any call. A defendant that lacks a written do-not-call policy, fails to train its personnel, or fails to maintain the required records violates § 64.1200(d) with every telemarketing call it makes—regardless of whether the individual recipient requested to be placed on a do-not-call list.

57. Defendant—or third parties acting on Defendant's behalf—initiated more than one telephone communication within a 12-month period to Plaintiff and the Class. The telephone communications were "telemarketing": each was initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. 47 C.F.R. § 64.1200(f)(13).

58. Plaintiff requested that Defendant stop. Defendant failed to honor Plaintiff's request and continued to initiate telephone communications. Defendant's

failure to honor Plaintiff's do-not-call request demonstrates that Defendant does not maintain the minimum procedures required by § 64.1200(d).

59. Because Defendant does not maintain the required minimum procedures, Defendant violated § 64.1200(d) each time it initiated a telephone communication to Plaintiff or any Class member.

60. As a result of Defendant's violations, Plaintiff and the Class suffered concrete harm, including invasion of privacy, aggravation, annoyance, intrusion upon seclusion, and disruption to daily life.

61. Defendant's violations were willful or knowing. Defendant is in the business of initiating telemarketing and is or should be aware of its obligation to maintain do-not-call procedures under federal law. Defendant received an explicit request to stop and continued initiating telephone communications—demonstrating deliberate disregard for its legal obligations.

62. Plaintiff and the Class are entitled to:

a. An injunction prohibiting Defendant from continuing to violate the TCPA. 47 U.S.C. § 227(c)(5)(A);

b. Statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5)(B); and

c. Treble damages of $1,500 per violation for Defendant's willful or knowing violations. 47 U.S.C. § 227(c)(5)(C).

## COUNT 3

## Violation of the FTSA, Fla. Stat. § 501.059(5) — Internal Do Not Call

## (On Behalf of Plaintiff and the FTSA Internal DNC Class)

63. Plaintiff incorporates by reference and realleges the preceding paragraphs, except for the paragraphs in the preceding Counts, as though fully set forth herein.

64. The FTSA prohibits a telephone solicitor or other person from initiating an outbound telephone call, text message, or voicemail transmission to a consumer who has previously communicated that he or she does not wish to receive such communications made by or on behalf of the seller whose goods or services are being offered. Fla. Stat. § 501.059(5).

65. Plaintiff communicated to Defendant that Plaintiff does not wish to receive further telephone communications from Defendant. Despite this request, Defendant continued to initiate telephone communications to Plaintiff and the Class. The telephone communications were telephonic sales calls. Fla. Stat. § 501.059(1)(j).

66. Defendant initiated the telephone communications to Plaintiff while Plaintiff was located in Florida, and to Class members located in Florida.

67. Defendant's conduct violated Fla. Stat. § 501.059(5).

68. As a result of Defendant's violations, Plaintiff and the Class suffered concrete harm, including invasion of privacy, aggravation, annoyance, intrusion upon seclusion, and disruption to daily life—harms that are compounded when a consumer

has explicitly asked the telephone communications to stop and the sender disregards that request.

69. Defendant's violations were willful or knowing. Defendant received a clear communication from Plaintiff to stop and made a deliberate choice to continue initiating telephone communications. Given the capabilities of modern telemarketing technology, Defendant had the ability to immediately comply with Plaintiff's request and chose not to do so.

70. Plaintiff and the Class are entitled to:

a. An injunction prohibiting Defendant from continuing to violate the FTSA. Fla. Stat. § 501.059(10)(a)(1);

b. Liquidated damages of $500 per violation. Fla. Stat. § 501.059(10)(a)(2);

c. Treble liquidated damages of $1,500 per violation for Defendant's willful or knowing violations. Fla. Stat. § 501.059(10)(b); and

d. Reasonable attorneys' fees and costs. Fla. Stat. § 501.059(11)(a).

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant immediately implement a litigation hold and take affirmative steps to preserve all documents, records, and electronically stored information ("ESI") relevant to the claims and defenses in this action, including but not limited to:

a. All call logs, text message transmission records, and voicemail records reflecting telephone communications initiated to Plaintiff, the putative Class members, or any consumer during the relevant time period, including the originating number, recipient number, date, time, duration, and content of each communication;

b. All records identifying the equipment, software, platform, or system used to initiate the telephone communications at issue, including vendor contracts, platform dashboards, configuration settings, and technical documentation;

c. All records of prior express consent or prior express written consent on which Defendant relies, including the date, time, method, and content of any purported consent and the identity of any lead generator or third party from whom such consent was obtained;

d. All internal do-not-call lists, opt-out logs, suppression lists, and records of consumer requests to stop receiving telephone communications, together with any written policies, training materials, or procedures related to Defendant's do-not-call compliance;

e. All records reflecting scrubs or queries against the National Do Not Call Registry or any other suppression database;

f. All marketing materials, scripts, templates, and campaign records associated with the telephone communications at issue;

g. All records in the possession, custody, or control of any vendor, lead generator, marketing partner, or other third party that Defendant contracted, hired, or directed to assist in initiating the telephone communications at issue; and

h. All communications, whether internal or with third parties, concerning the telephone communications at issue, consumer complaints, or compliance with the TCPA, FTSA, or any other applicable telemarketing law.

Defendant is on notice that spoliation of any such evidence may result in an adverse inference instruction, sanctions, or other appropriate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court enter judgment against Defendant and award the following relief:

A. An order certifying the Class as defined herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel pursuant to Fed. R. Civ. P. 23;

B. A permanent injunction prohibiting Defendant from further violations of the TCPA, the FTSA, and their implementing regulations;

C. Statutory damages of $500 per violation of the regulations prescribed under 47 U.S.C. § 227(c), trebled to $1,500 per violation for Defendant's willful or knowing conduct, pursuant to 47 U.S.C. § 227(c)(5);

D. Liquidated damages of $500 per violation of the FTSA, trebled to $1,500 per violation for Defendant's willful or knowing conduct, pursuant to Fla. Stat. § 501.059(10);

E. Reasonable attorneys' fees pursuant to Fla. Stat. § 501.059(11)(a);

F. Costs of this action;

G. Pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as this Court deems just and proper.

Dated: November 3, 2026

Respectfully submitted,

*/s/ Christopher Gold*
Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, P.A.**
350 Lincoln Road, 2nd Floor
Miami Beach, FL 33139
Telephone: (305) 900-4653
Email: chris@chrisgoldlaw.com

*Lead Counsel for Plaintiff*
*and the Proposed Class*